Frank W. Volk, Chief Judge
United States Bankruptcy Court
Southern District of West Virginia

**Dated: September 30th, 2017**

### UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF WEST VIRGINIA
### AT PARKERSBURG

| | |
|---|---|
| IN RE: | CASE NO. 6:16-bk-60085 |
| TIMOTHY HUGH DIALS, | CHAPTER 7 |
| Debtor. | JUDGE FRANK W. VOLK |
| TIMOTHY HUGH DIALS, <br><br> Plaintiff, <br><br> v. <br><br> HSBC BANK USA, N.A., REISENFELD & ASSOCIATES, LPA, LLC, and CHRISTOPHER DAWSON <br><br> Defendants. | ADVERSARY PROCEEDING NO. 6:17-ap-6000 |

### MEMORANDUM OPINION AND ORDER

Pending in the main case is the Amended Motion for *In rem* Relief from Automatic

Stay by Creditor, HSBC Bank USA, N.A., as Trustee on behalf of ACE Securities Corp. Home

Equity Loan Trust and for the registered holders of ACE Securities Corp. Home Equity Loan Trust,

Series 2006-ASAP3, Asset Backed Pass-Through Certificates ("HSBC"), filed February 14, 2017

[Dckt. 95]. Also pending are Debtor Timothy Hugh Dials' Motion for 9011(b) Sanctions against

HSBC and Counsel Christopher Dawson, filed February 27, 2017 [Dckt. 120], Mr. Dials' Notice

of Filing, Objection, Conditional Motion for Damages and Costs, filed April 19, 2017 [Dckt. 184],

and Mr. Dials' Motion to Strike Exhibits and Testimony of Robert Montoya, filed June 7, 2017 [Dckt. 221].

Pending in the adversary proceeding are Motions to Dismiss by Christopher Dawson and Reisenfeld & Associates, LPA, LLC ("Reisenfeld") [Dckt. 9] and by HSBC Bank USA, N.A. ("HSBC") [Dckt. 15], along with Plaintiff Timothy Hugh Dials' Response in Opposition to the Motions to Dismiss [Dckt. 20]. Mr. Dawson, Reisenfeld, and HSBC filed Replies in support of their motions to dismiss as well [Dckts. 33 & 34].

In the main case, the Court held evidentiary hearings on HSBC's Motion for *In rem* Relief and Dials' Motion for 9011(b) Sanctions on April 6, 2017, and May 30, 2017. At the May 30 hearing, the Court also heard Mr. Dials' Notice of Filing Objection. During these evidentiary hearings, the Court heard testimony and argument. The Court also received exhibits from the parties, but deferred ruling on their admissibility. Afterwards, the Court entered an order that gave the parties one week to file objections to the exhibits and to submit any additional documents regarding the matters. The parties having tendered their final filings regarding these issues on June 14, 2017, the matters are ready for adjudication.

In the adversary proceeding, the Motions to Dismiss were filed on June 12, 2017 and June 22, 2017. Mr. Dials filed his Response to the motions on July 13, 2017, and the Defendants filed their Replies on August 25, 2017. The matters are fully briefed and ready for adjudication.

This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(G) and (K). The Court has jurisdiction pursuant to 11 U.S.C. §362 and 28 U.S.C. § 1334.

# I.

The Court notes at the outset that it is permitted to take judicial notice of court records from another jurisdiction. *See Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236,1239 (4th Cir. 1989) (taking judicial notice of the content of court records); *see also St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1172 (10th Cir. 1979) ("federal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue") (citations omitted); *Rodic v. Thistledown Racing Club, Inc.*, 615 F.2d 736,738 (6th Cir. 1980), *cert. denied*, 449 U.S. 996 (1980) (federal courts may take judicial notice of proceedings in other courts of record) (citation omitted). The Court is aware that it may only take judicial notice of indisputable facts. When disputable facts are found herein, they are added only for context and given no weight in the evidentiary calculus.

## A.  Litigation of the Subject Property Prior to the Instant Case

In April 2006, Santana Cline, the alleged stepdaughter of Mr. Dials, executed a promissory note (the "Note) for $433,200.00 with CBSK Financial Group ("CBSK"). The Note was held by Mortgage Electronic Recording Systems, Inc. ("MERS") and was secured by a mortgage against real property located at 8243 Chippenham Drive, Dublin, Ohio (the "subject property"). The mortgage was later assigned to HSBC. On March 13, 2007, shortly after the assignment, HSBC filed a foreclosure complaint against Ms. Cline in Franklin County, Ohio. Originally, HSBC filed an Affidavit as to the Lost Promissory Note, which stated that the original

promissory note had been misplaced as a result of mishandling. However, on December 28, 2007,

HSBC filed a Motion to Incorporate Mortgage Note, which attached the Note as Exhibit A.

Although this copy of the Note did not have the endorsement copied to a separate page, the Court

notes that the endorsement clearly bled-through on page 5 and can easily be seen. Ms. Cline did

not object to entry of the Note at that time. On January 24, 2008, the Court of Common Pleas of

Franklin County granted summary judgment and specifically found that the mortgage and note

were duly recorded and validly assigned to HSBC (hereinafter the "foreclosure action"). *See HSBC

Bank v. Cline*, No. 07-cv-3604 (Franklin Cty. Ct. C.P.). Ms. Cline unsuccessfully appealed the

foreclosure action. A sheriff's sale was scheduled.

In April 2008, Ms. Cline filed a Chapter 13 bankruptcy petition, and the automatic

stay halted the scheduled sheriff's sale of the property. *See In re Santana Cline*, No. 2:08-bk-53519

(Bankr. S.D. Ohio). In July 2008, Ms. Cline's Chapter 13 case was dismissed for failure to present

a plan in a posture for confirmation. Subsequently, a second sheriff's sale was set. However, Ms.

Cline filed a Chapter 7 bankruptcy petition in October 2008 to once again halt the sale. *See In re

Santana Cline*, No. 2:08-bk-60588 (Bankr. S.D. Ohio). Importantly, in that case Ms. Cline listed

the property as an asset, scheduled HSBC's mortgage as a secured debt, and filed a statement of

intention to surrender the property. She received a discharge in February 2009, but she never

surrendered the property as promised.

After HSBC attempted an unsuccessful loss mitigation with Ms. Cline, a third

sheriff's sale was schedule for July 9, 2010. On May 26, 2010, Ms. Cline filed a motion to stay

sale and a motion for relief from judgment in the Franklin County foreclosure action from 2008.

In her motions, she contended that her signature and the assignment were forged. The crux of her

forgery challenge throughout the rest of her litigation campaign was that CSBK had ceased

4

operations well before the assignment to HSBC, and thus the assignment had to have been forged. Additionally, Ms. Cline and Mr. Dials alleged and continue to allege that the physical appearance of the assignment is evidence that it was forged. Both of Ms. Cline's motions were denied as untimely on June 29, 2010.

On July 7, 2010, Ms. Cline filed another Chapter 13 petition, which stayed the sheriff's sale. *See In re Santana Cline*, No. 2:10-bk-58115 (Bankr. S.D. Ohio). She also filed two adversary proceedings that challenged the validity of the mortgage lien. *See Cline v. HSBC, et al.*, No. 2:10-ap-2482 (Bankr. S.D. Ohio); *see also Cline v. HSBC, et al.*, No. 2:10-ap-2618 (Bankr. S.D. Ohio). After the defendants moved to dismiss, Ms. Cline voluntarily dismissed the first adversary proceeding in January 2011. That same month, her Chapter 13 case was dismissed for failure to present a plan in posture for confirmation. In September 2011, the second adversary proceeding was dismissed with the court finding that Ms. Cline did not intend to pursue prosecution.

Following Ms. Cline's Chapter 13 dismissal in January 2011, a sheriff's sale was scheduled anew for May 6, 2011. Once again, in March 2011, Ms. Cline moved for relief from judgment and to stay the sale in the foreclosure action. She did so in the form of a Motion to Vacate, again, the judgment of the Franklin County Court of Common Pleas from 2008. In her motion, Ms. Cline again argued forgery. The motion was denied as meritless, in part because Ms. Cline had previously argued forgery and did not present any new evidence. *See HSBC v. Cline, et al.*, No. 07CVE-03-3604 (Franklin Cty. Ct. C.P).

On May 5, 2011, Ms. Cline filed a third Chapter 13 case, which again stayed the sheriff's sale. *See In re Santana Cline*, No. 2:11-bk-54893 (Bankr. S.D. Ohio). She also filed an adversary proceeding against HSBC and once again challenged its mortgage lien. *See Cline v.*

*HSBC, et al.*, No. 2:11-ap-2336 (Bankr. S.D. Ohio). The Chapter 13 trustee moved to dismiss the bankruptcy case on various grounds, including Ms. Cline's repeated filing of failed bankruptcy petitions. On November 8, 2011, the bankruptcy court granted the motion to dismiss. On appeal, the bankruptcy court's order was affirmed. *See In re Santana Cline*, No. 11-54893 (B.A.P. 6th Cir.). Because of the dismissal of the bankruptcy case, the adversary proceeding was also dismissed.

Afterward, the Franklin County foreclosure action was reopened to allow re-appraisal and to schedule a sheriff's sale for March 30, 2012, four years after it was originally scheduled in 2008. On February 21, 2012, Ms. Cline filed a quiet title action in state court, which again stayed the sheriff's sale. *See Cline v. MERS, et al.*, No. 12-cv-2287 (Franklin Cty. Ct. C.P.). In her complaint, Ms. Cline alleged that the assignment of the mortgage was defective and invalid. On February 20, 2013, the state court granted summary judgment to the defendants on the grounds of claim and issue preclusion, concluding that she sought to re-litigate matters that were raised or could have been raised in the Franklin County foreclosure action.

Despite denial of her quiet title request, Ms. Cline again tried to re-litigate the same claim and issue. On April 25, 2013, Ms. Cline filed suit in the Southern District of Ohio against several defendants, including HSBC, alleging fraudulent foreclosure, conspiracy, and violations of the Fair Debt Collection Practices Act. *See Cline v. MERS, et al.*, No. 2:13-cv-401 (S.D. Ohio). In her amended complaint filed on July 9, 2013, she further alleged that the Note was released from MERS and deactivated on December 12, 2012. She stated that release and deactivation only occurred when a loan was removed from the system, and that her loan, thus, must have been removed from the system. On December 18, 2013, the district court granted defendants' motion to dismiss under Rule 12(b)(6) on the grounds of claim preclusion, issue preclusion, the *Rooker-*

*Feldman* doctrine, and statute of limitations. The court noted that the nucleus of Ms. Cline's argument was that the defendants attempted to commit fraud by forging the assignment of the Note.

While the Southern District of Ohio litigation was pending, on November 1, 2013, Ms. Cline filed suit in the United States District Court for the Central District of California against CBSK alleging that the Note was fraudulent. *See Cline v. CBSK*, No. 8:13-CV-01720-JLS-JPR (C.D. Cal.). On March 11, 2014, HSBC and MERS were also named defendants in the suit. She alleged various claims, including conspiracy, fraud, harassment, and violation of the Fair Debt Collection Practices Act. On the defendants' motion to dismiss under Rule 12(b)(6), the court concluded that *res judicata* applied based on the ruling by the Southern District of Ohio in 2013. The defendants' motion to dismiss was granted on March 5, 2015.

On September 21, 2015, Ms. Cline filed a Chapter 11 petition in Nevada. *See In re Santana Cline*, No. 2:15-bk-15412 (Bankr. D. Nev.). On January 13, 2016, HSBC filed a Motion for *In rem* Relief from Stay and submitted a proposed order. A hearing on the motion was held March 15, 2016. At which time, there was a bench ruling granting the motion and concluding that the Nevada bankruptcy was filed as part of a scheme to delay, hinder, and defraud creditors. The bench ruling was memorialized in a written order entered April 7, 2016. However, before the written order granting HSBC's *in rem* stay relief under Section 362(d)(4) of the United States Bankruptcy Code (the "Nevada order") was entered, on March 30, 2016, Ms. Cline submitted to the bankruptcy court an objection to entry of the proposed order. In her objection, she stated that the issue was moot because she had transferred the subject property by quitclaim deed on March 15, 2016, to Timothy Dials with the agreement that he would assume the property tax debt. She

further alleged that she had the original blue ink note from Ocwen that cancelled her debt on the property. This objection did not alter the March 15, 2016, bench ruling.

## B.  Motion for *In rem* Stay Relief in the Instant Bankruptcy Case

On June 13, 2016, Mr. Dials filed the instant Chapter 13 petition, which listed the subject property as an asset valued at $600,000 but did not disclose HSBC's mortgage. On September 26, 2016, HSBC filed an objection to confirmation inasmuch as the proposed Chapter 13 plan did not provide for the mortgage on the subject property. The objection further stated that there was an arrearage of $501,650.50, and the total loan balance was $909,029.43. On January 27, 2017, HSBC filed a Motion for *In rem* Relief from the Automatic Stay (doc. 76). In the motion, HSBC mistakenly attached a second mortgage document and stated that the original principal loan amount was $108,300. However, this motion was amended in short order on February 14, 2017 (doc. 95), and the amended motion attached the correct first mortgage with the original principal amount of $433,200. HSBC argues that it is entitled to *in rem* stay relief based on the Nevada order, which was binding on the property for a period of two (2) years.

On February 22, 2017, Mr. Dials voluntarily converted his case to a Chapter 7. He responded to HSBC's original Motion for Relief on February 9, 2017 (doc. 90), and the Amended Motion for Relief on February 27, 2017 (doc. 119). In his responses, Mr. Dials recited four arguments: (1) HSBC lacked standing; (2) the Note was cancelled; (3) Ocwen, HSBC's servicer, stated that there was no loan account on its system; and (4) HSBC did not have, and never presented, the Note.

## C.  Motion for 9011(b) Sanctions

On February 27, 2017, Mr. Dials filed his Motion for 9011(b) Sanctions against HSBC and its Counsel Christopher Dawson (doc. 120). In his motion, Mr. Dials asserted that sanctions are appropriate inasmuch HSBC presented misleading information by attaching the second mortgage to its original Motion for *In rem* Relief from Automatic Stay. Because the amended motion was filed shortly before the preliminary hearing on the original motion, Mr. Dials argued that HSBC waited to amend its motion in order to have an advantage over Mr. Dials because he would not have an opportunity to fully review the amendments prior to the hearing. He further alleged that HSBC should have specifically denied that the Note was cancelled.

HSBC filed an Objection to the Motion for 9011(b) Sanctions on March 28, 2017 (doc. 152). In its objection, HSBC explained that the original motion was amended to correct its clerical or typographical error. HSBC elaborated on its argument that the error was clerical, noting that the error would not have benefitted it at all considering the original stated amount was over $300,000 less than the actual amount owed. Although HSBC admitted to filing the amended motion close to the preliminary hearing, it argued that Mr. Dials had plenty of time to review the amended motion before the final hearing, which was scheduled for over a month and a half after the amended motion was filed. HSBC also denied that the Note was cancelled and stated its intent to present the original "wet-ink" note at the hearing scheduled for April 6, 2017.

**D.  April 6, 2017, Hearing on HSBC's *In rem* Motion and Mr. Dials' Motion for Sanctions**

On April 6, 2017, the Court held an evidentiary hearing on the Motion for *In rem* Relief and the Motion for Sanctions. At that time, Mr. Dials testified under oath. He asserted that HSBC lacked standing because it had been removed as the trustee to ACE Securities. Apr. Transcript 4:16-15:8. He cited two cases to support this assertion. The first case, *ACE Securities Corp., Home Equity Loan Trust, Series 2006-SL2 v. DB Structured Products, Inc.*, 36 N.E.3d 623 (N.Y. 2015), does not support Mr. Dials' statement and furthermore is unrelated to the same trust at issue in the instant case. Apr. Transcript 14:16-21. The second case, which Mr. Dials stated to be *Royal Park Investments v. DB Structured Products*, appears nonexistent after an exhaustive search. Apr. Transcript 14:16-15:2.[1]

Furthermore, Mr. Dials asserted that the original promissory note had been cancelled and that Ms. Cline was in possession of the original wet ink note marked cancelled in red ink. Apr. Transcript 37:20-24; 59:10-21. During cross-examination, HSBC presented the original blue ink note. Mr. Dials refused to review or comment on the presented note other than to say it was a forgery. Apr. Transcript 38:21-39:2. Mr. Dials stated that at the next evidentiary

---

[1] The Court notes that in his adversary proceeding complaint, Mr. Dials lists two other cases that purport to prove his assertion that HSBC has been removed as the Trustee to ACE Securities. Mr. Dials' first attempts to point the Court to "Gibbs Burn – Certificate Holders voting to remove Ocwen from Ace Securities Trust . . . ". Compl. p. 8 of 58. The Court does not understand the reference and, after searching and failing to find any information regarding this reference, will disregard it. Mr. Dials also mentions "*Dials v. Ace Securities* 670291/2016." Compl. p. 8-9 of 58. Again, an exhaustive search has produced no record of any case with the caption *Dials v. Ace Securities* or any related case involving the numbers provided. This reference will be disregarded.

hearing, he would bring the purported cancelled note that was in the possession of Ms. Cline. Apr.

Transcript 59:10-21.[2]

### E.  Mr. Dials' Notice of Filing, Objection, Conditional Motion for Damages and Costs

After the April evidentiary hearing, on April 14, 2017, Mr. Dials filed a Notice of

Filing, Objection, Conditional Motion for Damages and Costs (the "Notice") (doc. 184). In the

Notice, Mr. Dials alleged that the Note presented by HSBC at the April 6 evidentiary hearing was

a forgery. He crafted his forgery argument upon five separate allegations. First, he compared

theoretical differences between the blue ink note presented at the evidentiary hearing and the

certified copy of the Note that had previously been on the record. Second, he alleged that the

signatures of Santana Cline and Brent McElwee were forgeries. To support this, he presented

various signatures from Brent McElwee, President, and Charles B. McElwee, Director. It is unclear

if this is the same person or separate individuals. He also presented various signatures from Ms.

Cline. Third, he stated that CSBK was closed before it assigned the mortgage to HSBC. Therefore,

its assignment had to have been a forgery. Fourth, he stated that the endorsement was forged

because the endorsement should have said "American" not "America." However, he presented no

evidence to support this allegation. Finally, he argued that the Note is a forgery because Ms. Cline

is in possession of the Note marked cancelled. However, no evidence was presented to support this

---

[2] Mr. Dials has promised the Court an "original, blue-ink/wet-ink *cancelled* note" several times, including during his testimony and in an email attached to his Complaint in the adversary proceeding. Compl. p. 39 of 58. He avers in his email that the note "is in fact in [his] possession." *Id.* He has never shown or produced anything but a copy of the cancelled note he purports to have. The only "blue-ink"/"wet-ink" original copy of the Note provided to the Court has been by HSBC, which has very clearly not been cancelled.

allegation. In addition to arguing that the Note presented at the April hearing was a forgery, Mr.

Dials also reasserted that HSBC lacked standing but offered no new evidence.

HSBC responded to the notice on May 9, 2017 (doc. 194). In its response, HSBC

contends that several of Mr. Dials' allegations are barred by issue and claim preclusion since Ms.

Cline made the same arguments throughout her apparently vexatious litigation regarding the

mortgage note. HSBC further argued that if any claims survive issue and claim preclusion, they

should be barred by the *Rooker-Feldman* doctrine inasmuch as the Franklin County Court of

Common Pleas has already ruled on the validity and enforceability of the Note held by HSBC

during the foreclosure action. (doc. 194, p. 5). HSBC further disputed Mr. Dials' claim that Ocwen

has acknowledged that there is no loan. Mr. Dials had previously attached a letter from Ocwen that

he purported evidences that there is no loan on the subject property. However, HSBC pointed out

that the letter stated that no account was found under Mr. Dials' name or the address but requested

the loan number, property address, and the full names of all the borrowers so Ocwen could more

thoroughly research the issue. (doc. 194, Exhibit E). There is no evidence as to whether Mr. Dials

complied with Ocwen's request. HSBC also denied that Mr. Dials or Ms. Cline had the original

note marked cancelled. All cancelled notes on the record are simply uncertified copies and cannot

be properly authenticated. (doc. 194, pg. 5).


**F.  The Adversary Proceeding**

Mr. Dials filed a Complaint against HSBC, Mr. Dawson, and Reisenfeld on May

11, 2017. The Complaint alleged violations of Bankruptcy Code sections 362, 506, and 522(b),

along with "fraud on the court." Mr. Dials requested declaratory relief and imposition of sanctions.

He further requested the Court to conclude that HSBC's lien is void and that HSBC does not have

a claim to the subject property. The defendants moved to dismiss. In response, Mr. Dials filed a

Motion for Default Judgment, or in the Alternative, A Response in Opposition to the Motion to

Dismiss [Dckt. 20]. The Court denied the Motion for Default Judgment summarily and treated Mr.

Dials' filing as a Response to the Motions to Dismiss [Dckt. 28]. The defendants eventually filed

their Replies [Dckts. 33 & 34]. In the meantime, the Court stayed the adversary proceeding pending

disposition of the outstanding motions in both the main case and the adversary proceeding, and

directed that the parties halt any further pleadings pending the Court's permission. [Dckt. 27].


**G.  Final Evidentiary Hearing on All Pending Matters**


The Court held an evidentiary hearing on all the pending matters in the main case

on May 30, 2017. At that time, both parties presented testimony, arguments, and exhibits. Once

again, HSBC tendered the original blue ink note that is still outstanding and not marked

"cancelled." HSBC's witness, Roberto Montoya, took the stand to authenticate exhibits, verify the

status of the loan, and verify servicing practices of Ocwen. During his testimony, Mr. Montoya

stated that there was no evidence on the system that the loan was cancelled. May Transcript 23:14-

15; 24:5-13. He also stated that the system had no indication that the loan had been paid in full.

May Transcript 24:14-18. In fact, he stated that the amount due on the loan was over $800,000 and

no payments had been made since November of 2006. May Transcript 24:23-25:6. Mr. Montoya

also verified that the original blue ink note was the same note that was present on Ocwen's system.

May Transcript 27:20-28:13. Mr. Montoya further confirmed that, based on Ocwen's system, the

foreclosure judgment had not been satisfied or set aside and that HSBC remained trustee of the

trust in question. May Transcript 31:2-12; 31:16-23. The Court notes during an objection to Mr.

Montoya's testimony, Mr. Dials admitted that Ms. Cline had a mortgage and that HSBC had a foreclosure judgment related to the subject property. May Transcript 33:22-34:4.

During cross-examination, Mr. Dials attempted to attack the validity of the Note presented by HSBC. His argument centered on the fact that Ocwen had several images of the Note on its system and that those notes were unendorsed or a bleed-through of the endorsement was not present. However, Mr. Montoya explained that the images were of the original note, pre-endorsement, along with copies of that original. May Transcript 61:14-18; 72:1-4. Mr. Montoya further elaborated that the original Note *with* the endorsement had been in the system since August of 2007. May Transcript 61:7-18. The Court notes, as stated above, that the certified copy of the Note presented in the Franklin County foreclosure action has a bleed-through endorsement present.

After the final evidentiary hearing, Mr. Dials moved to strike the testimony of Mr. Montoya and the exhibits presented by HSBC. Mr. Dials' argument to strike the witness's testimony is based on a credibility challenge inasmuch as the witness is required to review and testify in approximately forty (40) cases a year. Mr. Dials' further asserted that the exhibits should be stricken from the record inasmuch as the Note did not appear on the record until April 2017. However, as stated above, the Note has been on the record since the foreclosure action in 2007.

## II.

### A.  Governing Standards

Generally, upon filing a bankruptcy petition, a litigation stay automatically goes into effect, which prevents creditors from taking any action against property of the debtor or the

bankruptcy estate. However, pursuant to Section 362(d) of the Bankruptcy Code, the automatic stay may be terminated, annulled, modified, or conditioned by the bankruptcy court. Sometimes, debtors abuse the stay with serial, and meritless, bankruptcy cases that impair creditors' attempts to enforce liens against the debtors' property. To prevent this behavior, as part of BAPCPA, Congress enacted Section 362(d)(4) of the Bankruptcy Code, which permits secured creditors who hold mortgages on real property to obtain *in rem* relief from the automatic stay. Pursuant to Section 362(d)(4), *in rem* stay relief is available to a creditor if the bankruptcy filing was part of a scheme to hinder or defraud creditors and which involves either multiple bankruptcy filings or transfer of the property in question without the court's approval or creditor's consent. 11 U.S.C. § 362(d)(4). An order for *in rem* stay relief remains binding for two (2) years on any subsequent bankruptcy that involves the subject property. *Id*.; 11 U.S.C. § 362(b)(20). When an *in rem* stay relief order is entered, it "nullif[ies] the ability of the Debtor and any other third party with an interest in the property to obtain the benefits provided by the automatic stay in future bankruptcy cases for a period of two years." *In re Muhaimin*, 343 B.R. 159, 169 (Bankr. D. Md. 2006).

An order for *in rem* stay relief is serious and not routinely awarded. As the United States Bankruptcy Appellate Panel for the Ninth Circuit noted, "[b]y seeking relief under § 362(d)(4), the creditor requests specific prospective protection against not only the debtor, but also every non-debtor, co-owner, and *subsequent owner of the property*." *Alakozai v. Citizens Equity First Credit Union (In re Alakozai)*, 499 B.R. 698, 703 (B.A.P. 9th Cir. 2013) (emphasis added). Under Section 362(b)(20), a subsequent debtor may move for relief from the *in rem* order if the debtor can show a changed circumstances or good cause.

A subsequent debtor may be barred from relief, however, pursuant to the principles of *res judicata*. The doctrine of *res judicata* prevents subsequent litigation between the same

parties or those in privity with the parties on matters that were actually and necessarily resolved in a prior adjudication. *See LVNV Funding, LLC v. Harling*, 852 F.3d 367, 371 (4th Cir. 2017). Parties are in privity when they "represent the same legal right in respect to the subject matter involved." *Martin v. Am. Bancorporation Ret. Plan*, 407 F.3d 643, 651 (4th Cir. 2005).

   The doctrine of *res judicata* covers both claim preclusion, which bars later litigation of all claims that were or that could have been adjudicated in the earlier action, and issue preclusion, which bars later litigation of legal and factual issues that were "actually and necessarily determined" in the earlier action. *First Union Commer. Corp. v. Nelson, Mullins, Riley, & Scarborough (In re Varat Enters.)*, 81 F.3d 1310, 1314-15 (4th Cir. 1996). Our court of appeals has established three elements that must be satisfied for the application of *res judicata* based on a federal court's prior judgment:

> (1) there is a prior judgment, which was final, on the merits, and rendered by a court of competent jurisdiction in accordance with the requirements of due process; (2) the parties to the second matter are identical to, or in privity with, the parties in the first action; and (3) the claims in the second matter are based upon the same cause of action involved in the earlier proceeding.

*LVNV Funding*, 852 F.3d at 371. (internal quotations omitted).

   In determining the preclusive effect of a state court judgment, federal courts must look to the law of the state in which the judgment was entered. *See Heckert v. Dotson (In re Heckert)*, 272 F.3d 253, 257 (4th Cir. 2001) ("A federal court, as a matter of full faith and credit, under 28 U.S.C. § 1738, must give a state court judgment the same preclusive effect 'as the courts of such State' would give."). "Only in the most rare case, however, may federal courts refuse to give full faith and credit to a state court judgment, and then only if 'a later statute contains an express or implied partial repeal' of § 1738." *In re Heckert*, 272 F.3d at 257. Ohio case law has developed the same *res judicata* principles as that of our court of appeals. *See Johnson's Island,*

*Inc. v. Board of Township Trustees*, 431 N.E.2d 672, 674 (Ohio 1982) (establishing the same

doctrine for *res judicata* as the United States Court of Appeals for the Fourth Circuit).

Another variety of preclusion is the doctrine of judicial estoppel. It is "an equitable

doctrine that prevents a party who has successfully taken a position in one proceeding from taking

the opposite position in a subsequent proceeding," and is designed to "protected the integrity of

the judicial system." *King v. Herbert J. Thomas Memorial Hosp.*, 159 F.3d 192, 196 (4th Cir.

1998) (citing *Lowery v. Stovall*, 92 F.3d 219, 233 (4th Cir. 1996)). The doctrine especially applies

in this case, as it is used by courts to "prevent [] part[ies] from 'playing fast and loose with the

courts,' from 'blowing hot and cold as the occasion demands,' or from attempting 'to mislead the

[courts] to gain unfair advantage.'" *Id.* (quoting *Lowery*, 92 F.3d at 223, 255). Judicial estoppel

occurs when three elements coincide:

> (1) the party to be estopped must be asserting a position that is factually
> incompatible with a position taken in a prior judicial or administrative proceeding;
> (2) the prior inconsistent position must have been accepted by the tribunal; and (3)
> the party to be estopped must have taken inconsistent positions intentionally for the
> purpose of gaining unfair advantage.

*Id.* at 196. Additionally, our court of appeals has held that "[t]he position at issue must be one of

fact as opposed to one of law or legal theory, and the bad faith requirement is the determinative

factor." *Zirkand v. Brown*, 478 F.3d 634, 638 (4th Cir. 2007) (internal quotation marks omitted).

Respecting the first element, judicial estoppel applies both to actual parties asserting incompatible

positions, as well as those in privity with them. *National Union Fire Ins. Co. v. Allfirst Bank*, 282

F. Supp. 2d 339, 348 (D. Md. 2003); *see also Milton H. Greene Archives, Inc. v. Marilyn Monroe*

*LLC*, 692 F.3d 983, 996 (9th Cir. 2012); *Bison Resources Corp. v. Antero Resources Corp.*, No.

1:16cv107, 2017 WL 1164500, at *5 (N.D. W. Va. Mar. 28, 2017).

## B.  Analysis of Issues in the Main Case

There is no dispute that HSBC received an order for *in rem* stay relief on the subject property from the United States Bankruptcy Court for the District of Nevada in 2016. *See In re Santana Cline*, No. 2:15-bk-15412 (Bankr. D. Nev.). Pursuant to sections 362(b)(20) and (d)(4), the *in rem* order is binding on the subject property inasmuch as this bankruptcy was filed within the two-year limitation. As shown by the holding in *In re Alakozai*, an *in rem* order is not only binding on the debtor but also any subsequent owner of the property within the two-year period. 499 B.R. at 703. Here, the order is binding on Mr. Dials because he is the subsequent owner of the subject property.

Although Mr. Dials has not moved for relief from the Nevada *in rem* order, he has objected to *in rem* relief here. His objection and his motion for damages focus on two arguments: (1) HSBC lacks standing and (2) the Note is a forgery.

Mr. Dials standing challenge is frivolous. There is no evidentiary support for the claim that HSBC was removed from the trust in question. Every single case "cite" that Mr. Dials provides in support of his contention appears either non-existent or plainly distinguishable.[3] Further, the best evidence of HSBC's standing is exhibited by the foreclosure order entered in 2008.

In addition, Mr. Dials' forgery argument is barred by *res judicata*. The several variants supporting his forgery argument have already been presented, or could have been

---

[3] The Court puts "cite" in quotations here because Mr. Dials has failed to provide any kind of correct citation for the cases he lists. He simply writes purported case names in italics and then lists numbers. The numbers do not have any apparent relevance. The Court has searched various systems using the case names and variations of the numbers provided. No meaningful results have been returned.

presented, by Ms. Cline in her serial litigation regarding the subject property. Turning to the
applicable elements, first, there are final judgments on the merits rendered by courts of competent
jurisdiction. Several courts have entered a final judgment finding that the Note is valid and not a
forgery. *HSBC Bank v. Cline*, No. 07-cv-3604 (Franklin Cty. Ct. C.P); *Cline v. MERS, et al.*, No.
12-cv-2287 (Franklin Cty. Ct. C.P.); *Cline v. MERS, et al.*, No. 2:13-cv-401 (S.D. Ohio); *Cline v.
CBSK*, No. 8:13-CV-01720-JLS-JPR (C.D. Cal.); *In re Santana Cline*, No. 2:15-bk-15412 (Bankr.
D. Nev.). The first element for *res judicata* is satisfied.

Second, the parties in the successive case must be in privity with the parties in the
first. Mr. Dials and Ms. Cline "represent the same legal right in respect to the subject matter
involved." *Martin*, 407 F.3d at 651. Ms. Cline was the previous owner of the subject property, and
Mr. Dials is the current owner. Clearly, Mr. Dials is in privity with Ms. Cline, which satisfies the
second element of *res judicata*.

Finally, the claims in the second matter must be based upon the same cause of action
in the earlier matter. Here, Mr. Dials' claims that the Note is a forgery are the same as Ms. Cline's
claims and stem from the same cause of action, namely, the assignment of the Note to HSBC. Ms.
Cline previously argued, in the Southern District of Ohio, that the foreclosure action in Franklin
County was fraudulent. In fact, the presiding judicial officer in the Southern District of Ohio noted
that "[Ms.] Cline's multitude of allegations and claims in this action stem from one common
assertion – that the assignment of her mortgage after CBSK was invalid and defendants thus have
no enforceable interest in the note of real property." *Cline v. Mortgage Electronic Registration
Systems, Inc.*, No. 2:13-cv-401, 2013 WL 6687257, at *5 (S.D. Ohio Dec. 18, 2013). The Court
continued, noting that "[t]he large majority of issues and claims raised in [Ms.] Cline's complaint
fit squarely within [the doctrines of claim preclusion and issue preclusion], in that she alleges that

the assignment of the mortgage was invalid and that defendants engaged in pre-foreclosure wrongdoing related to the assignment of her mortgage." *Id.* at *5. Further, in her amended complaint in that action, she similarly alleged that the mortgage had been released and deactivated and that attorney Ben Carnahan had prepared false assignment documents for his clients. *Id.* at *1. Mr. Dials, in parallel fashion, argues that the Note has been cancelled, that HSBC's attorney here (Mr. Dawson) has engaged in wrongdoing and has forged the Note, that HSBC lacks standing, and essentially, that HSBC retains no interest in the subject property. The third element of *res judicata* is satisfied.

Inasmuch as all of the elements have been satisfied, Mr. Dials' claims are barred by *res judicata*. Mr. Dials knowingly and voluntarily stepped into Ms. Cline's shoes when he accepted the quitclaim deed from her already foreclosed-upon property. Because Ms. Cline had a meaningful opportunity to be heard at a meaningful time and in a meaningful manner, Mr. Dials had the same.

Moreover, Mr. Dials' claims are barred by judicial estoppel. The three elements are met here, along with the other two requirements noted by our court of appeals in *Zirkand*. First, Mr. Dials is in privity, as established above, with Ms. Cline, and he is asserting a position that is factually incompatible with one presented by Ms. Cline in a legal proceeding in the past. Specifically, Mr. Dials states that HSBC does not have an interest in the subject real property and that the mortgage is cancelled and the Note is ineffective. However, in Ms. Cline's Chapter 7 filing in the Southern District of Ohio in 2008 (case no. 08-60558), her schedules listed the subject property as an asset. She also, most importantly, listed HSBC's mortgage as a secured debt, and filed an intention to surrender the property. She thus noted HSBC's interest in the property and

20

attempted to work with HSBC's loss mitigation department once her case was discharged. *Cline*,
2013 WL 6687257, at *2.

       The prior inconsistent position was accepted by the tribunal, as a discharge was
granted to Ms. Cline and there were no proceedings filed to prevent her discharge due to fraud
based on her schedules. It seems apparent as well that the Chapter 7 Trustee and the Court accepted
her schedules, and her case was otherwise uneventful.

       The party estopped, and the party in privity here, have taken the inconsistent
positions purposefully. This is not a case of mistake or inadvertence, against which the third
element is designed to protect. *See King*, 159 F.3d at 196 (citing *Lowery*, 92 F.3d at 224 and *John
S. Clark Co. v. Faggert & Frieden, P.C.*, 65 F.3d 26, 29 (4th Cir. 1995)). Ms. Cline attempted to
work through her mortgage issues after acknowledging HSBC's interest in 2008, and Mr. Dials
now attempts to assert that HSBC does not have an interest in the subject property so that he, Ms.
Cline, or both, may reside in the subject property without amortizing their indebtedness.

       Additionally, the inconsistent position taken herein is one of fact and not law or
legal theory. Finally, it is clear that the inconsistent position is taken in bad faith. The Court counts
no less than 12 (twelve) filings undertaken by Ms. Cline to thwart sheriff's sales and attempts by
HSBC to rightfully recover the subject property. Ms. Cline transferred the subject property to Mr.
Dials on the same day that *in rem* relief was granted from the bench by the District of Nevada
Bankruptcy Court.4 Also, Ms. Cline and Mr. Dials have accused at least two attorneys of forgery

---

4 Although no "hearing held" or bench ruling is noted on the Nevada Bankruptcy case
docket on March 15, 2016 (the day of the *in rem* hearing), Ms. Cline admits in a later pleading that
Judge Beesley granted *in rem* relief from the bench that day. She also argues in the same filing
that the ruling of *in rem* relief was mooted by her transfer of the subject property to Mr. Dials. *In
re Cline*, No. 15-154120btb, at Doc. 95, p. 1 (Bankr. D. Nev. Apr. 7, 2016).

without any evidentiary support whatsoever, absent some purported analytical findings by Ghiro

Labs that are not easily deciphered or authenticated. Mr. Dials has claimed numerous times to be

in possession of the "cancelled note," but has yet to produce it to the Court, the Chapter 7 Trustee,

or HSBC.

Of further concern is that Mr. Dials, at times, has difficulty keeping track of his

very own shotgun allegations. For example, he claimed during the May evidentiary hearing that

HSBC has no interest in the subject property, while later admitting that Ms. Cline had a mortgage

and that HSBC had a foreclosure judgment related to the subject property. May Transcript 33:22-

34:4. Incredibly, it seems that Ms. Cline has not made a single mortgage payment on the Note in

*years*, as the outstanding balance of the obligation is at least $909,029.43.[5]

This is the paradigmatic case for a judicial estoppel finding, namely, one where

parties engage in abusive and endless litigation in the hopes of buying time, clogging a busy

judicial system, and, in the process, compromising our state and federal tribunals' abilities to justly

and rapidly adjudicate real controversies between parties with viable claims and defenses.

Based on the foregoing discussion, it is, accordingly, **ORDERED** that the

Amended Motion for *In rem* Relief from Automatic Stay by the Creditor, HSBC Bank USA, N.A.,

as Trustee on behalf of ACE Securities Corp. Home Equity Loan Trust and for the registered

holders of ACE Securities Corp. Home Equity Loan Trust, Series 2006-ASAP3, Asset Backed

---

[5] This Court is not the first to be concerned with Ms. Cline and Mr. Dials' bad faith. The Nevada Bankruptcy Court, in its *in rem* order, found that " [Ms. Cline] failed to establish by clear and convincing evidence that the case was not filed in bad faith; due to foreclosure judgment in the state of Ohio, the subject property . . . is not property of the estate; that there are multiple indices that [Ms. Cline] filed her bankruptcy in bad faith, including [Ms. Cline's] numerous other bankruptcy filings, her failure to make a payment on the home since 2006 while she continued to occupy it, the multiple state and federal court matters initiated by the Debtor, . . . and that the filing of [Ms. Cline's] bankruptcy petition was part of a scheme to delay, hinder, and defraud creditors . . . ." *In re Cline*, No. 15-154120btb, at Doc. 100, p. 2 (Bankr. D. Nev. Apr. 7, 2016).

Pass-Through Certificates [Dckt. 95], be, and hereby is, **GRANTED**. The movant is given leave

to tender, on or before October 15, 2017, a proposed order providing, in greater detail, the relief

sought.

Further, the Court concludes that *res judicata* bars Mr. Dials' claim for damages.

As such, **IT IS ORDERED** that Debtor Timothy Hugh Dials' Notice of Filing, Objection,

Conditional Motion for Damages and Costs [Dckt. 184] be, and hereby is, **DENIED**.

For the reasons stated above, **IT IS FURTHER ORDERED** as follows in this

action:

1. That Debtor Timothy Hugh Dials' Motion to Strike Exhibits and Testimony of
   Robert Montoya [Dckt. 221] be, and hereby is, **DENIED**;

2. That Mr. Dials' Motion for Sanctions [Dckt. 120] be, and hereby is, **DENIED** as
   meritless, inasmuch as the penalty he seeks is for a mere clerical error that was
   rectified within three weeks; and

3. That the motions appearing at docket entries 108, 116, 117, 160, 164, and 211 are
   administratively terminated as having been (1) previously ruled upon, (2) mooted
   by subsequent events or rulings, or (3) meritless based upon the foregoing analysis.

## C. Analysis of Issues in the Adversary Proceeding

Defendants Mr. Dawson, Reisenfeld, and HSBC have moved to dismiss in the

adversary proceeding pursuant to Federal Rule of Civil Procedure 12(b)(6). Rule 12(b)(6) is made

applicable in bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7012(b). Federal

Rule of Civil Procedure 8(a)(2) requires that a pleader provide "a short and plain statement of the

claim showing . . . entitle[ment] to relief." Fed. R. Civ. P. 8(a)(2); *Erickson v. Pardus*, 551 U.S.

89, 93 (2007). Rule 12(b)(6) correspondingly permits a defendant to challenge a complaint when

it "fail[s] to state a claim upon which relief can be granted . . . ." Fed. R. Civ. P. 12(b)(6).

The required "short and plain statement" must provide "'fair notice of what the . . .

claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555

(2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957), *overruled on other grounds*, *Twombly*,

550 U.S. at 562-63); *McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin.*, 780

F.3d 582, 585 (4th Cir. 2015). Additionally, the showing of an "entitlement to relief" amounts to

"more than labels and conclusions . . . ." *Twombly*, 550 U.S. at 558. It is now settled that "a

formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *McCleary-Evans*,

780 F.3d at 585; *Giarratano v. Johnson*, 521 F.3d 298, 304 (4th Cir. 2008).

The complaint need not "plead facts sufficient to establish a prima facie case . . . to

survive a motion to dismiss, but . . . the more stringent pleading standard established in *Iqbal* and

*Twombly* applies." *Woods v. City of Greensboro*, 855 F.3d 639, 648 (4th Cir. 2017) (citing

*Twombly*, 550 U.S. at 569-70). Stated another way, the operative pleading need only contain

"[f]actual allegations . . . [sufficient] to raise a right to relief above the speculative level." *Twombly*,

550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (noting the opening pleading "does

not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-

unlawfully-harmed-me accusation."). In sum, the complaint must allege "enough facts to state a

claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570.

The decision in *Iqbal* provides some additional markers concerning the plausibility

requirement:

A claim has facial plausibility when the plaintiff pleads factual content that allows
the court to draw the reasonable inference that the defendant is liable for the

24

misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief. . . .'"

Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not "show[n]" -- "that the pleader is entitled to relief."

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, 556 U.S. at 678-79 (citations omitted).

As noted in *Iqbal*, the Supreme Court has consistently interpreted the Rule 12(b)(6) standard to require a court to "'accept as true all of the factual allegations contained in the complaint . . . .'" *Erickson*, 551 U.S. at 94 (citing *Twombly*, 550 U.S. at 555); *see also South Carolina Dept. of Health and Environmental Control v. Commerce and Industry Ins. Co.*, 372 F.3d 245, 255 (4th Cir. 2004) (quoting *Franks v. Ross*, 313 F.3d 184, 192 (4th Cir. 2002)). The Court is additionally required to "draw[] all reasonable . . . inferences from those facts in the plaintiff's favor . . . ." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). Lest one lose the forest for the trees, it bears emphasizing that "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of th[e alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Woods*, 855 F.3d at 652 (citing *Twombly*, 550 U.S. 544, 556 (2007)).

This Court will address Mr. Dials' claims as they are listed in his Complaint.

### 1. Count One -- Declaratory Judgment to Determine Validity, Extent, and Priority of Liens

Mr. Dials requests a declaratory judgment regarding the extent and validity of HSBC's lien on the subject property. He purports to do so under Bankruptcy Code sections 506 and 522 and Bankruptcy Rule 7001(2). However, the Complaint simply recites section 506(d) and then states that "HSBC and counsel cannot rebut the cancelled promissory note or the documentation showing that the filings by Defendants were clear forgeries, therefore the Court should grant Declaratory Relief to the Debtor." Cmplt. p. 9 of 58. A simple citation to a Bankruptcy Code section does not suffice to provide fair notice of the claim and the grounds upon which it rests; Mr. Dials' allegation is, at bottom, an infirm "formulaic recitation of the elements of a cause of action . . . ." *Twombly*, 550 U.S. at 555. Moreover, neither Mr. Dawson nor Reisenfeld purport to have any interest in the subject property. Thus, the "validity or extent" of their nonexistent lien cannot be determined.

Respecting HSBC, Mr. Dials simply recycles his unsupported forgery allegations and the cancelled promissory note theory. HSBC has provided the Court, twice, with the original, wet-ink promissory note. Mr. Dials has not provided this Court with his putative cancelled note, save for copies attached to his pleadings, despite his insistence that he either has it in his possession or can retrieve it. It is, accordingly, **ORDERED** that Count One be, and hereby is, **DISMISSED**.

### 2. Count Two -- The Endorsement as a Violation of the Automatic Stay

In Count Two, Mr. Dials asserts that the endorsement on the Note is a violation of the automatic stay. In so doing, he simply quotes a small portion of Bankruptcy Code section

362(a), and states that "any endorsement is an attempt to create, perfect, or enforce a lien against property of the estate in violation of 362(a)(4) of the US Bankruptcy Code." Compl. p. 9 of 58.

First, a simple recitation of a Bankruptcy Code section does not suffice to provide fair notice of the claim and the grounds upon which it rests. Mr. Dials' allegations are, again, no more than "a formulaic recitation of the elements of a cause of action . . . ." *Twombly*, 550 U.S. at 555. Moreover, Mr. Dials claim that the endorsement is a violation of the automatic stay is frivolous inasmuch as the stay was not in effect at the time of the endorsement. Mr. Dials filed his petition on June 13, 2016. The Note was endorsed in blank in 2006 and CBSK assigned its interest in the mortgage to HSBC on March 14, 2007. It is, accordingly, **ORDERED** that Count Two be, and hereby is, **DISMISSED**.

### 3.   Count Three -- Fraud on the Court and Request for Sanctions

In Count Three, Mr. Dials requests a finding of fraud. Among other circumstances warranting peremptory dismissal of the claim, he has not pled the request with particularity, as required by Federal Rule of Civil Procedure 9(b). It is, accordingly, **ORDERED** that Count Three, and thus the Complaint in its entirety, be, and hereby are **DISMISSED**. Defendants motions to dismiss [Adv. P. Dckt. 15 and Adv. P. Dckt. 9] are **GRANTED**.